[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14891
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-20990-FAM

LIG INSURANCE CO. LTD.,
other, LG Electronics Miami, Inc.,

Plaintiff-Appellee,

versus

INTER-FLORIDA CONTAINER TRANSPORT, INC.,

Defendant,

10997 PROJECT, INC.,
LEONEL DIAZ,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 1, 2014)

Before TJOFLAT, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this admiralty case, Defendants Leonel Diaz and 10997 Project, Inc. appeal the district court's determination that they were each liable for breach of contract damages as "alter-egos" of Defendant Inter-Florida Container Transport, Inc. ("Inter-Florida").[1]  No reversible error has been shown; we affirm.

This case involves the theft of three shipping containers full of computer monitors from a storage facility leased and used by Inter-Florida.  Plaintiff LIG Insurance Company, Ltd. ("LIG"), as insurance carrier for the intended recipient of the monitors, paid a claim in excess of $500,000 for the lost goods.

LIG, as a subrogated insurer, then filed a complaint against Inter-Florida, 10997 Project, and Diaz, asserting claims for (1) breach of contract, (2) bailment, (3) negligence, and (4) liability for alter ego and instrumentality of fraud.

After a non-jury trial, the district court concluded that Inter-Florida was liable for a breach of contract under the Carriage of Goods by the Sea Act, 46 U.S.C. § 30701 ("COGSA").[2]  Because COGSA provides an exclusive remedy, the district court dismissed LIG's claims for bailment and negligence.  The district

---

[1] Inter-Florida is not a party to this appeal.

[2] Defendants do not appeal the district court's ruling on COGSA liability.

2

court then concluded that Diaz and 10997 Project were "alter egos" of Inter-Florida and, thus, jointly liable for the breach of contract damages.

To determine whether to pierce the corporate veil and reach a corporate defendant's "alter ego," we look to the district court's factual findings. See Talen's Landing, Inc. v. M/V Venture, II, 656 F.2d 1157, 1160 (5th Cir. Unit A Sept. 1981). Factors that courts consider when deciding whether to pierce the corporate veil often include, among other things: (1) common directors and officers between corporations; (2) inadequate capitalization; (3) one corporation's use of another corporation's property and assets as its own; (4) informal inter-corporate loan transactions; (5) overlapping decision-making between corporations; (6) failure to observe formal legal requirements; and (7) "existence of fraud, wrongdoing or injustice to third parties." See id.; Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV-ALTONGAGA/ SIMONTON, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla. Aug. 2011); In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 75 (S.D.N.Y. 2009).

Defendants dispute none of the district court's factual findings, all of which support the district court's determination that Diaz and 10997 Project were alter egos of Inter-Florida. We will set out some examples of the found facts. First, Inter-Florida and 10997 Project share overlapping directors and officers, with Diaz being a 50% owner and president of 10997 Project and serving as a director, vice

3

president, secretary and treasurer of Inter-Florida.  Meanwhile, Diaz's wife is the owner and president of Inter-Florida.  The two companies also ignore corporate formalities, including holding no board meetings.

Both 10997 Project and Inter-Florida are grossly undercapitalized, with 10997 Project's only asset being the storage facility and Inter-Florida's only asset being a checking account.  10997 Project has no income, no bank account, and no employees.

Inter-Florida leases the storage facility from 10997 Project through an informal unwritten agreement.  And a third entity -- which also employs Diaz's wife -- pays both 10997 Project's property taxes and Inter-Florida's rent payments to 10997 Project.

The record also evidences an overlap in the decision-making authority between the two companies.  Although Diaz's wife and daughter (who also serves as vice president of Inter-Florida) were responsible for the storage facility's security, Diaz arranged for someone to check periodically on the storage yard. Diaz also assisted in returning the stolen trailers to the storage yard after they were found abandoned and empty.

In the light of this record, the district court committed no error in concluding that 10997 Project and Diaz were liable as alter egos of Inter-Florida.

AFFIRMED.

4